Larry J. Caldwell  (SBN 88867)
larry.caldwell@caldwellfirm.net
CALDWELL LAW FIRM
21550 Oxnard Drive, 3rd Floor
Woodland Hills, CA  91367
Telephone:  (424) 382-3111

Attorneys for Court-Appointed
Temporary Independent Fiduciary
Receivership Management, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>RIVERSTONE CAPITAL, LLC, a California limited liability corporation;  NEXGEN INSURANCE SERVICES INCORPORATED, a California corporation;  NGI BROKERAGE SERVICES, INC., a California corporation;  JAMES C. KELLY, an individual;  TRAVIS O. BUGLI, an individual;  ROBERT CLARKE, an individual;  ERIK MANQUEROS, an individual,<br><br>Defendants. | CASE NO. 19-CV-778-MWF (MAAx)<br>Honorable Michael W. Fitzgerald<br><br>**DECLARATION OF ROBERT W. MOORE, JR. IN SUPPORT OF TEMPORARY INDEPENDENT FIDUCIARY'S NOTICE OF FILING REGARDING TERMINATION OF RIVERSTONE MEWA AND PARTICIPATING PLANS** |

## DECLARATION

I, Robert E. Moore, Jr., upon penalty of perjury declare as follows:

    1.    I am of majority age and am President of Receivership Management,

1

Inc., which is the Court-appointed Temporary Independent Fiduciary ("IF") over the Riverstone MEWA and Participating Plans ("Plans").

2. I make this declaration with personal knowledge of the matters set forth herein based upon the investigation the IF has made into the facts and circumstances of the Riverstone MEWA and Participating Plans since the February 7, 2019 appointment from this Court.

3. Based upon the IF's investigation to date, there are approximately $33.5 million in processed, but unpaid, claims related to the Plans. More claims are being received so that amount will be increasing and is expected to increase significantly if the Plans are not terminated.

4. Based upon the IF's investigation to date, there are only approximately $3.5 - $4.0 million in assets that could become available to address unpaid claims.

5. So long as the Plans are not terminated, the IF is obligated under the Redacted Amended Temporary Restraining Order (D.E. #22) to pay for urgent care claims. The IF has construed this to include post-February 7, 2019 pharmacy claims and claims for critical care matters. The IF is receiving approximately $80,000.00 per week for post-February 7, 2019 pharmacy claims. The IF has been notified of several critical care claims. Payment of these amounts/claims will continue to exhaust the assets otherwise available set forth in ¶ 4 above, if the Plans are not terminated.

6. Based upon the IF's investigation, numerous employer groups, representing thousands of plan participants, have either exited the Plans or have expressed intent to exit the Plans effective February 28, 2019. Many of the employer groups, which have expressed the intent to exit as of February 28, 2019, have yet to pay February, 2019 premiums and whether they ever will is uncertain. The IF expects that more and more employer groups will exit the Plans. The

**DECLARATION OF ROBERT E. MOORE, JR.**     **19-CV-00778 (MWF)**

impact of these employer group exits is that while claims will continue to be received, the premium dollars will not, thus causing an ever-increasing deficit as between unpaid claims and assets available to pay them, which in turn, supports termination of the Plans.

7. Based on the IF's investigation, the overwhelming majority of Plans did not have stop loss coverage. The IF, in fact, has learned that only 23 employer groups had stop loss coverage, which terminates February 28, 2019. The IF has communicated with the 23 employer groups and the stop loss provider and is taking efforts to maintain the stop loss coverage through February 28, 2019. The IF also has presented options for the 23 employer groups to secure stop loss coverage if they exit the Plans. But the fact remains that to the extent that any of the 23 employer groups remain in the Plans, there will be no stop loss coverage for post-February 28, 2019 claims. Also, the lack of stop loss coverage for the bulk of the Plans means that large claims that have already been received and which are being received have no stop loss protection. The result of this "lack of stop loss" issue is that the exposure to the Plans for large claims, both presently and going forward is great. This situation also supports the termination of the Plans.

8. The Redacted Amended Restraining Order (D.E. #22) charges the IF to design and implement a fair process for paying out covered-claims to the extent feasible. Id at p. 2 ¶4. a. Based on the above-recited facts and circumstances, it is clear that the Plans are not viable and that there is no possibility of a rehabilitation of the Plans on a going forward basis. Equally clear is that the facts and circumstances set forth herein dictate that termination of the Plans and proceeding to liquidation is the only option available to the IF.

9. It is anticipated that the IF will present to the Court, on or before March 29, 2019, an Orderly Plan of Liquidation for the Court's review and approval.

3

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct based upon the investigation undertaken by the IF since its February 7, 2019 appointment.

Dated: 2/28, 2019   By: /s/ Robert E. Moore
Robert E. Moore, Jr.

Court-Appointed Temporary Independent Fiduciary Receivership Management, Inc.

61815589.1

4

**DECLARATION OF ROBERT E. MOORE, JR.**　　　　　　　　　　　　　19-CV-00778 (MWF)