UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **R. ALEXANDER ACOSTA**, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>**RIVERSTONE CAPITAL LLC**, a California limited liability corporation; **NEXGEN INSURANCE SERVICES INCORPORATED**, a California corporation; **NGI BROKERAGE SERVICES, INC.**, a California corporation; **JAMES C. KELLY**, an individual; **TRAVIS O. BUGLI**, an individual; **ROBERT CLARKE**, an individual; **ERIK MANQUEROS**, an individual.<br><br>Defendants | Case No.: CV 19-778-MWF (MAAx)<br><br>**REDACTED CONSENT JUDGMENT AND ORDER ACKNOWLEDGING PLAN TERMINATION AND SETTING DATE FOR INDEPENDENT FIDUCIARY TO SUBMIT ORDERLY PLAN OF LIQUIDATION** |

| | |
|---|---|
| 1 | Plaintiff R. ALEXANDER ACOSTA, United States Secretary of Labor |
| 2 | ("Plaintiff" or the "Secretary"), pursuant to his authority under Sections 502(a)(2) and |
| 3 | (5) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § |
| 4 | 1132(a)(2) and (5), has filed a Complaint against Defendants RIVERSTONE CAPITAL |
| 5 | LLC, a California limited liability corporation ("Riverstone Capital"); NEXGEN |
| 6 | INSURANCE SERVICES INCORPORATED, a California corporation ("NexGen |
| 7 | Insurance"); NGI BROKERAGE SERVICES, INC., a California corporation ("NGI") |
| 8 | (corporate defendants collectively referred to as "Riverstone Corporate Defendants"); |
| 9 | JAMES C. KELLY, an individual ("Kelly"); TRAVIS O. BUGLI, an individual |
| 10 | ("Bugli"); ROBERT CLARKE, an individual ("Clarke"), and ERIK MANQUEROS, an |
| 11 | individual ("Manqueros") (Kelly, Bugli, Clarke, and Manqueros collectively referred to |
| 12 | as "Individual Defendants") (Riverstone Corporate Defendants and Individual |
| 13 | Defendants collectively referred to as "Defendants"). The Secretary and Individual |
| 14 | Defendants (collectively referred to as the "Parties") have agreed to resolve the matters |
| 15 | in controversy in this civil action and consent to entry of this consent judgment |
| 16 | ("Judgment" or "Consent Judgment") in accordance herewith. |

A. The Parties admit that the Court has jurisdiction over this action pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1) and that venue lies in the United States District Court for the Central District of California, Western Division, pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

B. The Secretary alleges that the Riverstone Corporate Defendants and Individual Defendants Kelly, Bugli, and Clarke are or were fiduciaries to the Riverstone Plan, a multiple employer welfare arrangement ("Riverstone MEWA"), that provides medical benefits to employers and their employees through approximately 112 employer clients with ERISA-covered participating plans ("Participating Plans").

C. The Secretary further alleges the Riverstone Corporate Defendants and Individual Defendants Kelly, Bugli, and Clarke violated Sections 403, 404, and 406 of

ERISA, 29 U.S.C. §§ 1103, 1104, and 1106, with respect to the Riverstone MEWA and Participating Plans by, and as detailed more fully in the Complaint, failing to hold plan assets in trust; engaging in self-dealing by paying themselves out of plan assets and setting their own compensation; and failing to act prudently by failing to pay processed health claims, failing to disclose to employers that the Riverstone MEWA and Participating Plans were severely underfunded, and by operating as a MEWA without a state license.

D. The Secretary has alleged that as a result of the aforementioned ERISA violations, the Riverstone Corporate Defendants and Individual Defendants Kelly, Bugli, and Clarke are jointly and severally liable for unpaid medical claims as detailed more fully in the Complaint.

E. The Parties agree to entry of this Consent Judgment. The Parties further agree that this Consent Judgment shall fully settle all claims asserted by the Secretary in the Complaint.

F. This Consent Judgment is intended to ensure that Plan participants' medical claims are paid to the greatest extent possible under the circumstances.

G. Defendants each acknowledge receipt of the Complaint and hereby waive service of process of the Summons and the Complaint.

H. The Parties expressly waive Findings of Fact and Conclusions of Law.

I. Defendants each admit that the Riverstone Plan is a MEWA.

J. Defendants each admit that Participating Plans in the Riverstone MEWA are ERISA-covered plans.

K. The Secretary withdraws his claims against Defendant Erik Manqueros.

L. Defendant Kelly, Bugli, and Clarke each admit that by the actions referred to in Paragraph C above, they violated Sections 403, 404, and 406 of ERISA, 29 U.S.C. §§ 1103, 1104, and 1106.

IT IS HEREBY **ORDERED, ADJUDGED, AND DECREED** that:

1. Individual Defendants Kelly, Bugli, and Clarke are PERMANENTLY ENJOINED as fiduciaries, service providers, trustees, and administrators of the Riverstone MEWA and Participating Plans and Defendant Erik Manqueros is hereby DISMISSED from this action;

2. Receivership Management, Inc. ("Independent Fiduciary") shall continue to serve as independent fiduciary, successor Trustee and Plan Administrator to the Riverstone MEWA and Participating Plans, with plenary authority to administer said entities which includes, but is not limited to:

    a. Authority to exercise all fiduciary responsibilities relating to the Riverstone MEWA and Participating Plans;

    b. Authority to take, or continue to take, exclusive control of all plan assets of the Riverstone MEWA and the Participating Plans, including but not limited to bank accounts listed in the attached **Exhibit A** and any other accounts the Secretary has good cause to believe hold plan assets ("Plan Assets")[1];

    c. Authority to create a trust for the exclusive benefit of participants in the Riverstone MEWA and Participating Plans and move all Plan Assets into the trust as the Independent Fiduciary deems necessary;

    d. Authority to amend the documents governing the Riverstone MEWA;

---

[1] As used herein, Plan Assets shall mean any assets controlled by Defendants which are or were traceable to employer/employee payments made to any Defendant for the purpose of receiving health coverage or to participate in the Riverstone MEWA and any proceeds, assets or claims derived from those payments. This shall include, but is not limited to, all premiums (also known as premium equivalents and contributions), paid by employers participating in the Riverstone MEWA that originated from employer accounts and were transferred to Riverstone (including, but not limited to, transfers to Riverstone's general corporate bank accounts ending in 5003, 5016, 4787), before they may have been transferred by Riverstone and/or its officials to any other accounts.

e. Exclusive authority to appoint, replace and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers as the Independent Fiduciary shall, in the Independent Fiduciary's sole discretion, determine are necessary to aid the Independent Fiduciary in the exercise of the Independent Fiduciary's powers, duties, and responsibilities to the Riverstone MEWA and Participating Plans;

f. Authority to conduct an accounting of all medical claims and negotiate all medical claims with providers and others as the Independent Fiduciary deems necessary;

g. Authority to adjudicate and pay or deny any and all claims submitted to the Riverstone MEWA and Participating Plans;

h. Authority to pursue recovery of monies owed and due to the Riverstone MEWA and Participating Plans from any person obligated to make such payments under the terms and conditions of the Riverstone MEWA and Participating Plans;

i. Authority to identify and pursue recovery of Riverstone MEWA and Participating Plans' assets as well as any monies to which the Riverstone MEWA or and Participating Plans have a right of recovery;

j. Authority to identify and pursue claims on behalf of the Riverstone MEWA and Participating Plans;

k. Where a non-ERISA covered plan that participated in the Riverstone MEWA requests in writing to participate in the Independent Fiduciary's administration of the Riverstone MEWA and contractually commits to abide by any Orders with respect to the Independent Fiduciary issued by this Court, authority to administer the non-ERISA plan on behalf of the participants and beneficiaries of such plans in a manner consistent with the administration of the ERISA-covered plans as provided in this Judgment; and

l. Except as provided herein, the authority to delegate to such administrators, trustees, attorneys, employees, assigns, agents, and service providers such fiduciary responsibilities as the Independent Fiduciary shall determine appropriate. The Independent Fiduciary may not, however, delegate the authority to appoint, replace and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers or the responsibility to monitor the activities of the Riverstone MEWA and Participating Plans' trustees, attorneys, agents, and service providers.

3. Under the Redacted Amended Temporary Restraining Order and Order Lifting Seal entered on February 7, 2019 (Dkt. 22, ¶ 4(a)), the Independent Fiduciary had the authority to design and implement a fair process for paying out covered-claims to the extent feasible. The Independent Fiduciary, based upon its investigation, determined that the Riverstone MEWA and Participating Plans were not viable going forward and thus not subject to rehabilitation. The Independent Fiduciary determined that the only means of designing and implementing a fair process for paying out covered-claims, to the extent feasible, was to terminate the Riverstone MEWA and Participating Plans and proceed to liquidation. Accordingly, on February 28, 2019, the Independent Fiduciary sent notice of plan termination to all participating employer groups indicated in the records provided to the Independent Fiduciary stating that as of 11:59 p.m. (Pacific Time) on March 8, 2019, the Riverstone MEWA and Participating Plans would be terminated. A copy of the template of that notice of plan termination was filed, through Notice of Filing, on February 28, 2019. (Dkt. 27) The Independent Fiduciary's termination of the Riverstone MEWA and Participating Plans is not intended to interfere with employers that have procured new coverage or relieve employers of liability to the extent they have decided to stay self-funded. The Participating Plans are only terminated to the extent that they exist solely to participate in the Riverstone MEWA, and the Independent Fiduciary is not asserting jurisdiction

over those plans to the extent they offer benefits or have features that are outside the Riverstone MEWA. Through this Order, the Court acknowledges the Independent Fiduciary's action and authority to so terminate the Riverstone MEWA and Participating Plans. The Parties do not object to the termination of the Riverstone MEWA and Participating Plans. In furtherance of designing and implementing a fair process for paying out covered-claims to the extent feasible, the Independent Fiduciary is ORDERED to submit to the Court, on or before **March 29, 2019**, a proposed orderly plan of liquidation for review and approval. The Independent Fiduciary is authorized to pursue all legitimate claims the Riverstone MEWA and Participating Plans may have against Defendants or any third party which, in the Independent Fiduciary's judgment, are likely to result in a meaningful recovery of assets to pay participant claims or costs of administration. The Independent Fiduciary may pursue any claims which are being pursued by, or have been pursued by, the Plaintiff in this action. This Judgment and Order does not settle, waive, or release any claims that the Independent Fiduciary may assert based on ERISA or any other law against Defendants for past or present conduct, and the Independent Fiduciary is not precluded from obtaining additional monetary relief on ERISA claims against the Defendants or others notwithstanding any other provision of this Judgment and Order;

4. The Independent Fiduciary shall have authority to pay itself reasonable and necessary fees from the Riverstone MEWA and Participating Plans' assets and pay the reasonable and necessary fees of service providers. The payment of administrative expenses and all fees to the Independent Fiduciary, its assistants, attorneys, accountants, actuaries and other necessary service providers are to be considered priority administrative expenses of the Riverstone MEWA and Participating Plans, superior to any other class of expense or obligation of the Riverstone MEWA and Participating Plans; and the Independent Fiduciary's

second priority is to be the payment of legitimate claims to the greatest extent feasible. Before causing Plan Assets to be used to pay compensation, fees or expenses, the Independent Fiduciary shall provide written notice by filing with this Court a Fee Notice supported by an itemized statement of work, consistent with the Fee Rates set forth in the attached **Exhibit B**, and by serving a copy to the Secretary. If no objection to the Fee Notice is filed by the Secretary within ten (10) calendar days, such compensation, fees, and expenses shall be deemed reasonable expenses;

5. The Independent Fiduciary may not be held personally responsible for any claims against the Riverstone MEWA and Participating Plans which existed, arose, matured or vested prior to the appointment of Receivership Management, Inc. on February 7, 2019;
6. The Independent Fiduciary shall comply with all applicable rules and laws;
7. Individual Defendants Kelly, Bugli, and Clarke are enjoined from coercing, intimidating, interfering with or attempting to coerce, intimidate, or interfere with the Independent Fiduciary or with the agents, employees or representatives of the Independent Fiduciary;
8. Individual Defendants Kelly, Bugli, and Clarke shall cooperate fully with the Independent Fiduciary and/or its successors, agents, employees or representatives, by among other things:
    a. Delivering or otherwise making available to the Independent Fiduciary all books, records, bank accounts, and documents of every nature relating in any manner to the management and operation of the Riverstone MEWA and Participating Plans;
    b. Authorizing third parties in possession of documents or information relevant to the Riverstone MEWA and Participating Plans' administration and management to turn over such documents and information to the Independent Fiduciary, including but not limited to the funds in the Exhibit

A accounts and Additional Riverstone Accounts referenced in Paragraph 10, below; and

    c. Facilitating the transfer of possession and control of the assets of the Riverstone MEWA and Participating Plans to the Independent Fiduciary.

9. Individual Defendants Bugli, Kelly, and Clarke are PERMANENTLY ENJOINED from:

    a. Exercising, or attempting to exercise, directly or indirectly, any discretionary authority or control with respect to the management or administration of any employee benefit plan or trust holding assets of employee benefit plans subject to the coverage of ERISA, and from providing any services, directly or indirectly, for compensation or otherwise to any such employee benefit plan or trust holding the assets of such plans;

    b. Serving or acting, directly or indirectly, for compensation or otherwise, as a trustee, fiduciary, service provider, agent, consultant, or representative with respect to any employee benefit plan subject to ERISA; and

    c. Occupying any position that involves, directly or indirectly, decision making authority with respect to, or custody or control of, the assets or administration of any employee benefit plan subject to ERISA.

10. Within seven (7) business days of the date of entry of this Order, Individual Defendants Bugli, Kelly, and Clarke shall provide to the Independent Fiduciary all bank account numbers and financial institution information holding any assets of the Riverstone MEWA and Participating Plans, and/or of the Riverstone Corporate Defendants not already within the possession or control of the Independent Fiduciary ("Additional Riverstone Accounts") and, within ten (10) business days, shall transfer all assets in the Additional Riverstone Accounts to the Independent Fiduciary for the purpose of paying covered medical claims and necessary service providers to the greatest extent feasible.

11. Individual Defendants Bugli, Kelly, and Clarke shall immediately terminate any contracts or agreements for services that they jointly and severally, have or have had with any entities relating to the Riverstone MEWA and Participating Plans and may not receive additional monies or compensation due under any such contracts or agreements for services;

12. Pursuant to the All Writs Act, 28 U.S.C. § 1651, all hospitals, physicians, pharmacists, and other health care providers ("Providers"), including their agents, employees, representatives, and assigns, are ENJOINED from commencing or continuing any judicial, administrative, enforcement, or other proceeding, asserting any lien, providing negative reports to any credit rating or credit reporting entity, and threatening to take any such action against any participant, beneficiary, or insured covered or intended to be covered by the Riverstone MEWA or Participating Plans, or any health plan or insurance arrangement sponsored by, administered by, or affiliated with the Riverstone MEWA or Participating Plans related to any debt or to any claim for payment for medical or health care services rendered to any such participant, beneficiary or insured. Because the Riverstone MEWA commingled the assets of the ERISA plans with the assets of non-ERISA plans, with the result that non-ERISA plan participants were harmed by Defendants' ERISA violations, the All Writs Act protection is further afforded to participants and beneficiaries that opt in to the Independent Fiduciary's administration of the Riverstone MEWA in accordance with Section 2(k) above;

13. Individual Defendants Kelly, Bugli, and Clarke expressly relinquish and forfeit any claim on the assets described in Paragraph 2(b), Paragraph 10, and Exhibit A. All such assets shall be deemed Plan Assets. To the extent Individual Defendants Kelly, Bugli, and Clarke personally guaranteed loans that were commingled with Plan Assets, they each relinquish all counterclaims or causes of actions against the Independent Fiduciary for refusing to repay such loans;

14. Although Individual Defendants Bugli, Kelly, and Clarke are jointly and severally liable for millions of dollars in unpaid claims, the Secretary has reviewed detailed affidavits on their income and assets submitted by each of them under penalty of perjury and determined that Individual Defendants Bugli, Kelly, and Clarke do not have sufficient assets to provide a meaningful recovery to the Riverstone MEWA and Participating Plans at this time. Accordingly, the Department is not seeking a monetary judgment against these Defendants at this time, but reserves the right to seek such a judgment at any time prior to the final disposition by the Independent Fiduciary (or any successor) of all claims and issues relating to the Riverstone MEWA and this Court's approval of the termination of the Independent Fiduciary's (or any successor's) engagement in connection with the Riverstone MEWA.

15. Individual Defendants Bugli, Kelly, and Clarke acknowledge that the Secretary has received and relied upon their sworn affidavits on their financial condition plus certain supporting documentation (collectively, "Individual Defendants' Financial Statements") in concluding that Individual Defendants Bugli, Kelly, and Clarke do not have sufficient assets to provide a meaningful recovery at this time. Individual Defendants Bugli, Kelly, and Clarke agree that: (a) the Secretary may permit any other government agency to review Individual Defendants' Financial Statements, (b) Individual Defendants Bugli, Kelly, and Clarke will voluntarily cooperate with the Secretary in any further investigation of Individual Defendants' Financial Statements and financial condition, (c) within ten (10) days of the signing of this Order, Individual Defendants will furnish the Secretary a full accounting of any assets and income that they received in connection with the Riverstone MEWA, and (d) Individual Defendants will not object to any inquiry or request for information or documents made to third parties by the Secretary regarding their income or assets or the information set forth in Individual Defendants' Financial Statements. Nothing in this Paragraph, however, shall be

construed as requiring the Secretary to show that Individual Defendants' Financial Statements were inaccurate or incomplete as a precondition for pursuing monetary claims against Individual Defendants, as set forth in Paragraph 14 above;

16. Individual Defendants each expressly waive any and all claims of any nature which they may have against the Secretary, the United States Department of Labor, or any of its officers, agents, attorneys, employees or representatives, arising out of, or in connection with, the allegations contained in the Complaint on file in this action, any other proceedings or investigation incident thereto, or based on the Equal Access to Justice Act, as amended;

17. The Parties shall each bear their own costs, expenses, and attorney's fees incurred in connection with any stage of this proceeding, including but not limited to attorney's fees which may be available under the Equal Access to Justice Act, as amended;

18. Nothing in this Consent Judgment and Order is binding on any governmental agency other than the United States Department of Labor, Employee Benefits Security Administration, in relation to the specific civil allegations set forth in this Complaint, or on any private party (except as provided in Paragraph 12 above) not named in this action;

19. Nothing in this Consent Judgment and Order is binding on any non-ERISA covered plan that has participated in the Riverstone MEWA and has not requested in writing to be a part of the Independent Fiduciary's process;

20. This Court retains jurisdiction of this action for purposes of enforcing compliance with the terms of this Consent Judgment and Order;

21. By signing their names to this Consent Judgment and Order, the Parties each represent that they are informed and understand the effect and purpose of this Consent Judgment and Order;

22. Any person signing this Consent Judgment and Order on behalf of a party expressly acknowledges and represents that he or she has the authority to sign for, and legally bind, that party;
23. This Consent Judgment and Order may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

The preliminary injunction hearing currently scheduled for Monday, March 11, 2019 at 3:00 p.m. is hereby VACATED.

The Court directs entry of this Consent Judgment and Order as a final order, pursuant to Federal Rule of Civil Procedure 58 and Local Rule 58-6.

IT IS SO ORDERED.

Dated: March 13, 2019

_____
The Hon. Michael W. Fitzgerald
United States District Judge

Entry of this Consent Judgment and Order is hereby consented to:

FOR PLAINTIFF:
KATE S. O'SCANNLAIN
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

IAN H. ELIASOPH
Counsel for ERISA

Dated: March 7, 2019          ___/s/ Grace A. Kim_____
GRACE A. KIM
Senior Trial Attorney
Attorneys for Plaintiff Secretary of Labor

*\* The filing attorney hereby certifies that she has the signed originals and/or written confirmation to include electronic signatures for all signatories to this document available for inspection if requested.*

FOR INDIVIDUAL DEFENDANTS:

Dated: March 7, 2019                        __/s/ James Kelly____
Defendant James Kelly

Dated: March 7, 2019                        __/s/ Travis Bugli_____
Defendant Travis Bugli

Dated: March 7, 2019                        __/s/ Robert Clarke_____
Defendant Robert Clarke

Dated: March 7, 2019                        __/s/ Erik Manqueros_____
Defendant Erik Manqueros

FOR THE INDEPENDENT FIDUCIARY:

Dated: March 7, 2019                        __/s/ Robert E. Moore, Jr._____
Robert E. Moore, Jr.

                                                     __*President*_____
Title
For Receivership Management, Inc. as Court-appointed Independent Fiduciary over the Riverstone MEWA and Participating Plans

## **Exhibit A to Consent Judgment**

| Account Number | Account Holder | EIN/TIN |
|---|---|---|
| Bank of America | | |
| **********2604 | Riverstone Capital LLC | ******7994 |
| **********4787 | Riverstone Capital LLC | ******7994 |
| **********5029 | Riverstone Capital LLC | ******7994 |
| **********5003 | Riverstone Capital LLC | ******7994 |
| **********5016 | Riverstone Capital LLC | ******7994 |
| **********1794 | Riverstone Capital LLC | ******7994 |
| **********1781 | Riverstone Capital LLC | ******7994 |
| **********2120 | Riverstone Capital LLC | ******7994 |
| **********2117 | Riverstone Capital LLC | ******7994 |
| **********1820 | Riverstone Capital LLC | ******7994 |
| **********1833 | Riverstone Capital LLC | ******7994 |
| **********1846 | Riverstone Capital LLC | ******7994 |
| | | |
| Scotiabank and Trust (Cayman) Ltd. | | |
| ****8543 | Riverstone Captive Strategies Ltd./ | ******9507 |
| ****0435 | Travis Bugli | |

**Exhibit B to Consent Judgment**
**Effective April 1, 2018 Fee Schedule for Receivership Management, Inc.**

Independent Fiduciary/Receiver $170 per hour

Claims processing administration
ERISA Matters-Employee Benefit
Plan Administrator-Receiver
Operations $160 per hour

Accounting $130 per hour

Accounting Assistant $87 per hour

Data Analyst/Payment Processor $61 per hour

Medical Claims Processing, Retirement
Plan Distributions Processing,
and Paralegal Assistance $65 per hour

Information Tech Consultant $65 per hour

Overhead charges are included in the hourly rates shown above.

Office Expenses which can be specifically identified to a receivership (eg. telephone, postage, copies etc.) are charged to the receivership as incurred.

Travel: Per Diem-$39.00 for meals and incidentals (first and last day of travel 75% of per diem amount allowed). Per Diem paid only if overnight travel is required.

Transportation:
By private car: 50 cents per mile; By common carrier: Actual ticket cost at coach.

Lodging: Actual amount charged.