UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 19-778-MWF (MAAx)              Date:  May 1, 2019
Title:     R. Alexander Acosta v. Riverstone Capital LLC, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

           Deputy Clerk:                    Court Reporter:
           Rita Sanchez                     Not Reported

           Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
           None Present                      None Present

Proceedings (In Chambers):   ORDER RE: PLAINTIFF R. ALEXANDER
                             ACOSTA'S MOTION FOR DEFAULT JUDGMENT
                             AGAINST DEFENDANTS RIVERSTONE CAPITAL
                             LLC; NEXGEN INSURANCE SERVICES, INC.;
                             AND NGI BROKERAGE SERVICES, INC. [44];
                             INDEPENDENT FIDUCIARY'S MOTION TO
                             APPROVE ITS [PROPOSED] ORDERLY PLAN OF
                             LIQUIDATION AND FOR ORDER PROVIDING
                             ALL WRITS ACT PROTECTION [48]

        Before the Court are two motions:

        First, there is Plaintiff Secretary of Labor R. Alexander Acosta's Motion for
Default Judgment Against Defendants Riverstone Capital LLC; NexGen Insurance
Services, Inc.; and NGI Brokerage Services, Inc. (the "Corporate Defendants"), filed
on March 25, 2019 (the "Default Motion").  (Docket No. 44).  No opposition to the
Default Motion was filed.  Counsel for the Secretary attended and no one purporting to
represent Corporate Defendants appeared at the hearing.

        Second, there is the Independent Fiduciary's Motion to Approve Its [Proposed]
Orderly Plan of Liquidation and for Order Providing All Writs Act Protection (the
"Liquidation Motion"), filed on March 29, 2019.  (Docket No. 48).  The various
objections to the Liquidation Motion are discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)              Date:  May 1, 2019
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

The Court has read and considered the papers filed in connection with the two motions and held a hearing on April 29, 2019.

For the reasons discussed below, the motions are ruled upon as follows:

- The Default Motion is **GRANTED**.  The Secretary has satisfied all procedural and substantive requirements for a default judgment.  Moreover, the request to recover the Corporate Defendants' remaining funds to pay unpaid claims and injunctive relief is reasonable; and

- The ruling on the Liquidation Motion is **DEFFERED**.  The Independent Fiduciary's proposed liquidation plan will be revised to address, among other issues, various amendments to paragraphs 3 and 5, revision to the Court's involvement in the final determination of disputed claims, and new timelines for a two-track process for employers with and without stop loss coverage.

## I.    BACKGROUND

The facts and procedural history are well known to the parties.  Therefore, the Court will limit its recitation of facts to those necessary for context.

On February 1, 2019, the Secretary commenced this action against the Corporate Defendants, James C. Kelly, Travis O. Bugli, Robert Clarke, and Erik Manqueros (together with the Corporate Defendants, "Defendants").  (Complaint ¶ 8 (Docket No. 1)).  In the Complaint, the Secretary alleges various violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  (*Id.* ¶¶ 50–102).  The Secretary specifically seeks to "remedy breaches of [Defendants' ERISA] fiduciary duties committed in the course of their management of a multiple employer welfare arrangement ('MEWA')."  (*Id.* ¶ 1).

The Secretary alleges that, as of November 2018, Defendants have discretionary authority over approximately 112 separate self-funded ERISA-covered plans (the "Participating Plans") that cover approximately 16,303 participants, as well as an additional 7 non-ERISA plans that cover approximately 2,384 people.  (*Id.*).  The

---

**CIVIL MINUTES—GENERAL**                                                    **2**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

Secretary alleges that contrary to their misleading statements that they "merely provided administrative services to the separate Participating Plans," Defendants actually "administer the Participating Plans as a single self-funded MEWA." (*Id.*). Moreover, funds for the Participating Plans are alleged to have been "commingled and used to pay for the claims of other Participating Plans" and premiums were ordered to be deposited directly into Defendants' corporate accounts. (*Id.*).

Defendants are alleged to have "operated the [Participating Plans] in a manner likely to result in having insufficient funds to pay claims." (*Id.* ¶ 2). For example, Defendants "intentionally set premiums at rates below the market for fully insured plans that provided similar coverage" and that these rates were not approved by an actuary and were not actuarially sound. (*Id.*). Moreover, Defendants "charged exorbitant fees," such as 20% in management fees and up to 25% in broker and other administrative fees. (*Id.* ¶ 3).

In light of the low premiums and high fees, the MEWA has "fallen seriously behind in paying claims" and the gap between the amount of unpaid claims and the amount the MEWA has on hand to pay claims has become urgent. (*Id.* ¶ 4). As of December 27, 2018, the MEWA "had accumulated approximately $24 million in processed but unpaid claims despite the fact that the MEWA has very low reserves and only collects about $4–6 million in premiums per month." (*Id.*). As a result, employees on the plans have been "saddled with thousands of dollars in unpaid medical claims – with some facing escalating collections actions and others threatened with not being able to obtain life-saving medical treatment." (*Id.*).

Through this action, the Secretary seeks to "restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief." (*Id.* ¶ 7).

## II.   **THE DEFAULT MOTION**

Through the Default Motion, the Secretary seeks default judgment against the Corporate Defendants. (Default Mot. at 1).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-778-MWF (MAAx)            Date:  May 1, 2019**
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

### A.      <u>Service and Other Procedural Requirements</u>

Having reviewed the filings in this action, the Court is satisfied that the Secretary has met all procedural requirements for obtaining a default judgment against the Corporate Defendants.

On February 6, 2019, the Secretary's service processor served the Corporate Defendants by leaving a copy of the Summons, Complaint, and other relevant documents, with Priti Patel at 4900 California Avenue, Tower A, Suite 420, Bakersfield, California 93309.  (Docket Nos. 17–19).  Ms. Patel is described as the "Human Resources Manager" for the Corporate Defendants.  (*Id.*).

Accordingly, the Court is satisfied that the Corporate Defendants received actual notice of this lawsuit under Federal Rule of Civil Procedure 4(h)(1)(A) and California Code of Civil Procedure section 416.10(b).

As a matter of discretion, the Court also requires that a plaintiff serve a motion for default judgment on the relevant defendant(s).  The Court does not require service under Rule 4, but does require that the service is reasonably likely to provide notice to the defendant(s).  On March 25, 2019, the Secretary served the Motion on the Corporate Defendants via U.S. mail.  (Default Mot. at 2; Declaration of Grace A. Kim "Kim Decl.") ¶ 16 (Docket No. 44-2)).  The Court is therefore satisfied that the Corporate Defendants have actual notice of the Motion.

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the Clerk under Rule 55(a).  Having reviewed the filings in this action, the Court determines that the procedural requirements imposed by Federal Rule of Civil Procedure 55 and Local Rule 55-1 are met as to the Corporate Defendants: (1) the Clerk entered their default on March 12, 2019; (2) they failed to respond to the Complaint; (3) they are not infants or incompetent persons; (4) they are not serving in the military and thus the Service Members Civil Relief Act does not apply; and (5) Plaintiff served them with notice of the Motion and supporting papers on March 25, 2019, in a manner deemed appropriate by the Court.  (*See* Docket No. 38; Kim Decl. ¶¶ 14–16).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)              Date:  May 1, 2019
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

Accordingly, the Secretary has satisfied the procedural requirements for obtaining entry of a default judgment.

### B.      The *Eitel* Factors

The choice as to whether a default judgment should be entered is at the sole discretion of the trial court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has determined that a court should consider seven discretionary factors before rendering a decision on motion for default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

The seven factors are: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.  *Id*.

The Court determines that, with the exception of the strong policy favoring a decision on the merits, which is not dispositive, the *Eitel* factors weigh in favor of granting the Motion.

### C.      Remedies

Having determined that default judgment is appropriate, the Court next must consider remedies.  The Secretary seeks to recover the Corporate Defendants' remaining funds to pay Riverstone MEWA claims and injunctive relief.  (*See* Compl. at Prayer for Relief; Default Mot. at 9–10).  The Secretary's request is proper because it does not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010) (quoting Fed. R. Civ. P. 54(c)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

### 1.      Recovery of remaining funds

The Secretary first seeks an order from the Court "[r]equiring [the Corporate] Defendants to restore all losses they caused to the Participating Plans."  (Default Mot. at 9 (citing Compl. at Prayer for Relief)).  The Secretary explains that through their ERISA violations, the Corporate Defendants "caused Riverstone MEWA participants to incur millions of dollars in unpaid claims," and the Secretary simply "seeks recovery of any remaining sources of [the Corporate] Defendants' funds for purposes of paying Riverstone MEWA claims to the greatest extent feasible."  (*Id.* at 10).

Because the Court views as persuasive the Secretary's claims that the Corporate Defendants have violated their fiduciary duties and ERISA, the Court finds it appropriate to grant the requested relief as to the recovery of the remaining funds.

### 2.      Injunctive relief

The Secretary also requests a permanent injunction against the Corporate Defendants.  (*Id.* at 9).  The Secretary specifically seeks to enjoin the Corporate Defendants from, among other things, the following:

- Serving as fiduciaries, service providers, trustees, and administrators of the MEWA and Participating Plans;

- Coercing, intimidating, interfering with or attempting to coerce, intimidate, or interfere with the Independent Fiduciary or with the agents, employees, and representatives of the Independent Fiduciary;

- Cooperating fully with the Independent Fiduciary by (1) delivering or otherwise making available to the Independent Fiduciary all books, records, bank accounts, and documents of every nature relating in any manner to the management and operation of the MEWA and Participating Plans; (2) authorizing third parties in possession of documents or information relevant to the MEWA and Participating Plans' administration and management to turn over such documents and information to the Independent Fiduciary; and (3) facilitating the transfer of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV 19-778-MWF (MAAx)**                **Date:  May 1, 2019**
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

possession and control of the assets of the MEWA and Participating Plans to the
Independent Fiduciary;

- Providing to the Independent Fiduciary all bank account numbers and financial
  institution information holding any assets of the MEWA and Participating Plans
  within seven business days of the entry of this Order; and

- Terminating any contracts or agreements for services that they jointly and
  severally, have or have had with any entities relating to the MEWA and
  Participating Plans and may not receive additional monies or compensation due
  under any such contracts or agreements for service;

(*See* Proposed Order (Docket No. 44-4)).

As noted by the Secretary, ERISA specifically authorizes the removal of a
breaching fiduciary, as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of
> the responsibilities, obligations, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to such plan any losses
> to the plan resulting from each such breach, and to restore to such plan
> any profits of such fiduciary which have been made through use of assets
> of the plan by the fiduciary, and ***shall be subject to such other equitable
> or remedial relief as the court may deem appropriate, including removal
> of such fiduciary***.

29 U.S.C. § 1109(a) (emphasis added); *see Donovan v. Mazzola*, 716 F.2d 1226, 1238–
39 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984) ("In enacting ERISA Congress
intended to provide courts with the broad and flexible equitable remedies of traditional
trust law in cases involving breaches of fiduciary duty.").

The Court thus finds it appropriate to grant the Secretary's requested injunctive
relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  **CV 19-778-MWF (MAAx)** | **Date:  May 1, 2019** |
| Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al. | |

Accordingly, the Default Motion is **GRANTED**.

## III.   **THE LIQUIDATION MOTION**

Through the Liquidation Motion, the Independent Fiduciary ("IF") seeks approval for its proposed liquidation plan.  (Liquidation Mot. at 1).

### A.   **Summary of Proposed Liquidation Plan**

The IF first notes that "financial status of the Riverstone MEWA is dire – some $36 million in unpaid claims and some approximate $3.5 million of assets that might be available to pay out of the Riverstone MEWA Liquidation Estate."  (Liquidation Mot. at 6; Declaration of Robert E. Moore, Jr. Dated March 29, 2019 ("Moore Decl.") ¶¶ 3–4 (Docket No. 48-1)).

The IF notes that it is charged with "design[ing] and implement[ing] a fair process for paying out covered claims to the extent feasible."  (Liquidation Mot. at 6). The IF also notes that what constitutes a "fair process for paying out covered claims to the extent feasible" will "not doubt be open to debate and criticism from self-interested groups."  (*Id.*).  The IF states that one "simple and sweet" way for liquidation is to "simply add up the processed claims in the aggregate and make a pro-rata distribution of cents on the dollar from the assets it controls."  (*Id.* at 6–7).  But the IF also correctly recognizes that such a plan "would likely expose the employee participants, and perhaps the employer groups, to collection actions from medical providers and would likely frustrate efforts by the employers which have viable stop loss coverage from having eligible claims to make to the stop loss insurer."  (*Id.* at 7).

In proposing the liquidation plan, the IF states that it is guided by the following considerations:

- The employee participants, who "are truly the most innocent of victims" in this situation and should be protected to the fullest extent possible;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                  Date:  May 1, 2019
Title:     R. Alexander Acosta v. Riverstone Capital LLC, et al.

- The fact that the sponsoring employers entered into what has been held as a self-funded MEWA;

- The Participating Plans' documents applicable to the sponsoring employers providing that the sponsoring employer shall pay benefits and administrative expenses; and

- The Complaint filed in this action by the Secretary stating that contractual documents between the Riverstone MEWA and employers indicate that the participating employers were responsible to cover any underfunding of claims.

(*Id.*).

With these considerations in mind, the IF's proposed liquidation plan first contemplates a calculation of the total unpaid claims.  The existing third-party administrators will "process all claims received with dates of service through the date upon which the particular sponsoring employer either was terminated from the Plan (e.g. the date through which premiums/premium equivalents/contributions were paid) or through the March 8, 2019 termination date[,] whichever is later." (*Id.* at 8).  The third-party administrators will then provide each employer with a "claims run" of those unpaid claims.  (*Id.*).  Each sponsoring employer will be instructed to pay the unpaid claims of its employee participants, through the applicable third-party administrator, to the applicable medical care provider(s) and obtain releases from those providers.  (*Id.* at 8–9).  The sponsoring employers can use the existing third-party administrator in "contacting the particular medical providers and reaching agreements as to the amount of unpaid claims to be paid (e.g. negotiating down the unpaid amount, repricing, etc.)." (*Id.* at 9).

Meanwhile, the third-party administrators are currently processing, and will continue to process, claims and establishing processed, adjudicated (but unpaid) amounts for those claims.  (*Id.*).  The proposed liquidation plan establishes a deadline of May 7, 2019, after which "no further medical claims will be accepted from any source by the third-party administrators for processing." (*Id.*).  Though the proposed

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                Date:  May 1, 2019
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

liquidation plan contemplates that "the processing of claims received by the third-party administrators is, and will continue to be, 'on-going'," final unpaid claims runs will be provided to each sponsoring employer by no later than June 1, 2019.  (*Id.*).

Each sponsoring employer will then have until July 15, 2019, to either (1) pay the unpaid claims amounts or (2) make agreements with and paid the relevant medical care providers the agreed upon amounts, as well as securing releases from those medical care providers.  (*Id.*).  If an employer does not pay, or partially pays, the unpaid claims for medical care provided to its employee participants, then the IF will "make demand upon the sponsoring employer to pay such amount, as shown on the unpaid claims runs."  (*Id.*).  And if the demand is not addressed, the IF will consider bringing an action(s) against the non-responsive employer(s).  (*Id.*).

The proposed liquidation plan contemplates a Proof of Claim procedure whereby the "claims by sponsoring employers who paid the unpaid claims amounts, other medical care related claims and non-medical care related claims will be received by the IF" by no later than August 15, 2019.  (*Id.*).  Within 30 days of the Court's approval of the proposed liquidation plan, the IF "will post on the website [these Proof of Claim] Forms, along with instructions for use by sponsoring employers, employee participants and medical providers in submitting a claim as against the Riverstone MEWA assets." (*Id.* at 9–10).  The IF will also "mail to those persons or entities, of who/which it is aware that may have a non-medical related claim, a [Proof of Claim] Form with instructions."  (*Id.* at 10).

The IF will then "review, adjudicate and issue a determination of the [Proof of Claim] claim to the claimant."  (*Id.*).  If any Proof of Claim claimant "is dissatisfied with the IF's determination of the [Proof of Claim]," the IF will also provide instructions setting forth "procedure[s] . . . to request reconsideration."  (*Id.*).  And if the claimant is "further dissatisfied," then the claimant may be able to "petition this Court for review and final determination."  (*Id.*).

The proposed liquidation plan also notes that the IF "will review information regarding potential claims or causes of action to be brought in the effort to increase the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:        R. Alexander Acosta v. Riverstone Capital LLC, et al.

amount of assets available to pay claims and administrative expenses." (*Id.*).  The proposed liquidation plan finally states that "upon completion of the [Proof of Claim] process and upon the completion of any asset recovery efforts, the IF will submit to the Court a plan of distribution of available assets for the Court to approve." (*Id.*).

## B.     Non-Opposition to the Proposed Liquidation Plan

On April 1, 2019, the Secretary filed a Notice of Non-opposition to the Liquidation Motion, indicating that representatives for the Secretary "have reviewed the [IF's Liquidation Motion] and related documents and do not object to the requests contained therein." (*See* Docket No. 49 (citations omitted)).   At the hearing, the Secretary reiterated his non-opposition to the Liquidation Motion.

At the hearing, the Secretary and the IF maintained that the Court should approve the proposed liquidation plan, including the specific provision that permits a dissatisfied claimant to "petition this Court for review and final determination" of a disputed claim.  The Secretary and the IF noted that while such a specific provision is not typical, similar provisions have been approved by other district courts.  The Secretary specifically stated that there will likely be additional issues that come up during the claims adjudication process that the IF will need to deal with, and having the Court's involvement on the "front end" would be beneficial to all parties and non-parties and to resolve issues more quickly.

Having reviewed the proposed liquidation plan and listened to the arguments at the hearing, the Court is not convinced that it will likely approve the revised liquidation plan with this specific provision.  As both the Secretary and the IF indicated at the hearing, the inclusion of such a provision is not typical.  The fact that other district courts have approve similar provisions is insufficient to explain why it should be approved in *this* action.  And as indicated at the hearing, the Court is particularly concerned that such a process would be too administratively difficult and extremely time-consuming.  While an alternative may be to appoint a Special Master, that would not serve the goal of avoiding further depletion of the Riverstone MEWA assets.  The IF should keep this discussion in mind when proposing the revised liquidation plan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)              Date:  May 1, 2019

Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

### C.    <u>Opposition to the Proposed Liquidation Plan</u>

On April 8, 2019, Nations Reliable Lending, LLC ("NRL") filed an Opposition to the Liquidation Motion.  (Docket No. 55).  The IF replied to NRL's Opposition on April 15, 2019.  (Docket No. 61).  The Secretary also filed a Statement of Position with respect to NRL's Opposition.  (Docket No. 60).  Here, the Court will address only the arguments not discussed in connection with NRL's (and the other objectors') objections.  *See infra.*

NRL raises the following two points:

***First***, the sponsoring employers are "required to obtain releases from all providers," but should not be required to do so.  (NRL's Opp. at 6).  NRL states that in many cases, the amounts due to a provider are small and are less than $20.  (*Id.*).  NRL contends that it is "unlikely that providers in those cases will be responsive to requests for releases."  (*Id.*).  Instead of requiring releases from all providers in all instances, NRL proposes that "releases should be obtained only on claims that are settled for less than the amount due, and releases should not be required to shield plan participants and beneficiaries from their out of pocket payment obligations."  (*Id.*).

In response, the IF agrees that the proposed liquidation plan appears to "require[] that the Sponsoring Employer secure releases from the medical provider in all cases, not just those in which reduced negotiated claim amounts are secured."  (IF's Response to NRL at 2).  The IF proposes that it "will amend the (Proposed) Orderly Plan of Liquidation accordingly."  (*Id.*).  The IF proposes that paragraph 3 in the proposed liquidation plan be stricken and replaced with newly drafted language provided in the Response to NRL's Objection.  (*Id.* at 2–3).

***Second***, NRL argues that its "contract with Riverstone required Riverstone to pay all claims," so NRL did not agree to pay any shortfall in claims, or pay any administrative expenses."  (NRL's Opp. at 6).  Moreover, other Participating Plans may have different terms.  So, to the extent that NRL has a different contract with Riverstone than do other sponsoring employers, NRL "may have a stronger claim to

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  CV 19-778-MWF (MAAx) | **Date:**  May 1, 2019 |
| Title:  R. Alexander Acosta v. Riverstone Capital LLC, et al. | |

reimbursement than other plans" and it "does not appear that the IF has any mechanism in place to determine how reimbursement can be made equitably." (*Id.*).

In response, the IF notes that to the extent NRL has a "side deal between [itself] and Riverstone," that agreement does "not set forth the obligations of NRL regarding the NRL employee benefits plan over which the [IF] is in control." (IF's Response to NRL at 3). Rather, the operative document for the NRL employee benefits plan is the Plan Document and the Summary Plan Description, which make clear that the NRL employee benefit plan is self-funded and that "the costs and benefits owed are the responsibility of NRL." (*Id.* at 3–4). The Secretary's Statement also supports this conclusion, noting that NRL "overlooks the controlling Plan Document and Summary Plan Description clearly explaining that NRL's plan was a self-funded plan, that NRL was responsible for paying employee health claims, and naming NRL as plan administrator and fiduciary." (Secretary's Statement at 2).

Accordingly, the NRL employee benefit plan—which is what the IF is to enforce—clearly shows that NRL is responsible for costs and claims.

### D.  **Objections to the Proposed Liquidation Plan**

The Court has received several objections to the IF's proposed liquidation plan and addresses them below.

### 1.  **Hard Rock's Objection**

On April 8, 2019, SCE Partners, LLC d/b/a Hard Rock Hotel and Casino Sioux City ("Hard Rock") filed an Objection. (Docket No. 51). The IF replied to Hard Rock's Objection on April 15, 2019. (Docket No. 65). Hard Rock objects to the various deadlines proposed by the IF. The Court overrules Hard Rock's objection based on the proposed amendment.

Hard Rock is an employer of "approximately 215 employees" and was formerly covered by the Riverstone MEWA since March 2018. (Hard Rock's Objection at 2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

Hard Rock paid "its insurance premiums to the Riverstone MEWA through March 31, 2019, with the final premium of $94,527 paid on February 25, 2019." (*Id.*).

Hard Rock primarily objects to the various deadlines proposed by the IF.  Hard Rock specifically explains that, pursuant to the terms of its agreement, its employees "have 365 days to submit claims from the date of service." (*Id.*).  Accordingly, its employees could submit claims for services rendered as late as March 8, 2020, even though the proposed liquidation plan would calculate claims runs through only March 8, 2019. (*Id.*).  Moreover, Hard Rock points out that an employee can appeal certain adverse determination for up to 165 days, extending the time that for claims determination to August 20, 2020. (*Id.* at 2–3).  Hard Rock objects to the proposed liquidation plan as "unrealistic and insufficient to allow [it] to determine its actual universe of Employees' claims which will have to be paid out pursuant to applicable deadlines." (*Id.* at 7).

In response, the IF first notes that Hard Rock "does not contest that it, as a Sponsoring Employer in the Riverstone MEWA, is liable to pay the unpaid medical claims of its participating employees." (IF's Response to Hard Rock's Objection at 2).  The IF then explains that Hard Rock's reliance on ERISA regulations is misplaced. (*Id.* at 3–4).  For example, Hard Rock "conflates the Proposed Liquidation Plan's run-off period with the Plan's and ERISA's claims and appeals procedures." (*Id.* at 5).  Moreover, there is "[n]othing in ERISA (or any other law of which the Independent Fiduciar[y] or its counsel are aware) mandates the Plan to allow participants a window of 365 days after the rendering of healthcare services to object to an [adverse determination]." (*Id.* at 5).  The IF explains that the "purpose of such a window is to ensure that participants file claims to object . . . within a reasonable time after the medical expense is incurred." (*Id.*).  The IF finally states that to "address Hard Rock's concerns, [it] is willing to consider a Plan amendment to change that objection-filing window to a lesser number of days." (*Id.*).  But for the reasons discussed below, the Court concludes that such an amendment is unnecessary.

The IF offers three reasons why the proposed timeline is adequate, which the Court finds substantially, though not entirely, convincing:

---

**CIVIL MINUTES—GENERAL**                                        **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV 19-778-MWF (MAAx)**              Date:  **May 1, 2019**
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

*First*, a protracted liquidation process would materially increase the administrative costs associated with that process, draining away funds that could be used to pay claims against the liquidation estate.  (*Id.* at 6).  If the IF were to adopt Hard Rock's proposal, then third-party administrators are "on line" (and having to pay unpaid claims) for well over a year.  (*Id.*).

*Second*, the IF explains that the proposed timelines are necessary to "ensure that eligible stop loss claims can be submitted to the stop loss carrier for those Sponsoring Employers which have that coverage intact."  (*Id.*).  To the IF's understanding, the stop loss policies for some sponsoring employers (1) set forth a deductible amount for each individual policy, (2) provided specific "per employee" (not aggregate) coverage for eligible claims above that deductible, and (3) were "reimbursement" policies, meaning that the policyholder would need to pay the entire amount of the claim and the policy would then "reimburse" the eligible amount over the deductible.  (*Id.* at 7).  For example, if an individual policy had a $75,000 deductible, a participant had adjusted medical claims of $100,000 in the applicable coverage period, and the sponsoring employer paid the $100,000, then the stop loss carrier would receive the claim, review it and, if eligible, reimburse the sponsoring employer $25,000.

Each individual stop loss policy set forth a deadline of May 31, 2019, by which the claim was to be paid in order for any "above-the-deductible" amount to be considered for reimbursement.  (*Id.* at 8).  The stop loss carrier, however, "has agreed to extend the Loss Paid Date from May 31, 2019 to July 31, 2019 for losses incurred in the policy period for those Sponsoring Employers that have paid stop loss premiums through the February 28, 2019 termination date."  (*Id.*; Declaration of Robert E. Moore, Jr. Dated April 15, 2019 ("Moore Decl.-Hard Rock") ¶ 11 (Docket No. 62-1)).

According to the IF, the proposed timelines make realistic the ability of a sponsoring employer to "(1) see who of its participating employees have adjusted unpaid provider invoices that are above the applicable stop loss deductible; (2) pay those provider invoices; and (3) submit to [the carrier], prior to July 31, 2019 Loss Paid Date, for consideration of reimbursement to the Sponsoring Employer the amounts above the stop loss policy deductible."  (Liquidation Mot. at 8).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 19-778-MWF (MAAx)**            **Date:  May 1, 2019**
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

At the hearing, Hard Rock and other objectors argued that they understand that in light of the deadline on July 31, 2019, there needs to be a more compressed timeline for claims eligible for stop loss coverage.  But there are only 18 employers with stop loss coverage and more than 100 without it, or the vast majority of the affected employers.  In light of the overwhelming number of employers in the latter group, the objectors contended that there should be a two-track process where the claims with stop loss coverage can be targeted and addressed first to ensure that eligible employers would receive any benefits that might mitigate loss.  The IF, noting that it is not in favor of a two-track process, acknowledged that it might be the only way to preserve the benefits for employers with stop loss coverage and provide the flexibility to negotiate with providers for employers without the coverage.

The Court agrees that a two-track process would be a more productive and effective liquidation plan.  The employers with stop loss coverage, whose claims would be targeted first, would maintain the benefits of the extension provided by the stop loss carrier.  As noted, the employers without stop loss coverage would have more time to negotiate with providers for lower costs and be less likely to receive inaccurate claims runs.  As with NRL's Opposition, the IF should keep in mind this discussion in proposing the revised liquidation plan with specific dates for the two-track process.

***Third***, the IF states that the proposed timeline "for all provider invoices to be submitted (May 7, 2019) is realistic" based upon on the experience of the IF, and with "confirmation from the third-party administrators, the overwhelming bulk of medical invoices are submitted by medical providers within 30 days of the date of service," which given the outside/latest termination date of March 8, 2019, would be April 7, 2019.  (*Id.*).  For the reasons already discussed, this point may not be as pertinent with respect to the non-stop loss covered claims.

Accordingly, Hard Rock's Objection is **OVERRULED *in part***.

### 2.      NRL's Objection

On April 8, 2019, NRL filed an Objection to the Liquidation Motion.  (Docket No. 54).  The IF's Response, as discussed above, also addresses these Objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

NRL raises three objections:

*First*, NRL objects to "the portion of the proposed order providing that website posting constitutes adequate notice to employers, participating employees and medical providers," non-parties to this action.  (NRL's Objection at 1).  While agreeing that "serving the impacted employers with the [Liquidation Motion] is expensive," NRL states that "emailing notification to employers is certainly not cost-prohibitive" and there is no reason that the IF "cannot provide email service of all filings and orders to impacted employers."  (*Id.* at 1–2).

In the Liquidation Motion, the IF notes that it has previously mailed a Notice of Benefit Fund Termination to all sponsoring employers, employee participants, and medical providers.  (Liquidation Mot. at 5).  In that mailing, the IF states that it included the following message:

> It is anticipated that the Orderly Plan of Liquidation will be submitted at or near the end of March, 2019.  That filing will be posted on the website at www.receivermgmt.com/riverstone-nexgenhealthplan.  You are directed to refer to that website at that time regarding matters relating to the Orderly Plan of Liquidation.

(*Id.*).  The sponsoring employees, employees, and medical providers therefore "have been placed on notice of the late March 2019 submission of the Proposed Liquidation Plan and have been instructed to refer to the above-noted website regarding this filing." (*Id.*).

The IF explains that there has been no further mailing because the mailing referenced above, "while necessary, was massive and was completed . . . at a cost of approximately $123,000.00."  (*Id.* at 6 (citing Moore Decl. ¶ 5)).  And what has been incurred as administrative fees and expenses and what is reasonably expected to be incurred as administrative fees and expenses, the IF can "ill afford to send out mailings to the sponsoring employers, employee participants and medical care providers at $123,000 per mailing."  (*Id.*).

---

**CIVIL MINUTES—GENERAL**                                                     17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| Case No. | CV 19-778-MWF (MAAx) | Date: May 1, 2019 |
|---|---|---|

Title:   R. Alexander Acosta v. Riverstone Capital LLC, et al.

The Court recognizes that funds are limited and the IF's time is constrained. Moreover, it is unclear the scope of the issue because the IF notes that "its staff, its counsel and the third-party administrators have received innumerable contacts from sponsoring employers, participating employees and medical providers (or their respective counsel) in relation to matters occurring in this action and in relation to Riverstone MEWA situation in general." (IF's Response to NRL at 6). But out of an abundance of caution, the Court will order the IF to mail **and** email the revised liquidation plan to all sponsoring employers, employee participants, and medical providers after the Court has reviewed and approved it.

At the hearing, the Court also indicated that it will consider using the All Writs Act, 28 U.S.C. § 1651, to enjoin providers who will receive notice but then fail to submit a timely claim from seeking payment from the Riverstone MEWA assets, the employers, or the employees. This approach would avoid putting the burden entirely on the employers, as long as the proposed deadline is reasonable and notice is given to the providers. In approving the revised liquidation plan, the Court does in fact intend to exercise its authority under the All Writs Act to enjoin providers who will receive notice and then fail to submit claims in a timely manner.

*Second*, NRL objects to paragraph 3 of the IF's proposed liquidation plan because it (1) "requires employers to pay outstanding claims without regard to the copayment, coinsurance and deductible obligations of plan participants and beneficiaries; (2) "requires employers to obtain 'a full acceptance and release/accord and satisfaction' when paying claims, even if the amounts expected by the providers are paid in full"; (3) "does not provide a mechanism for employers to challenge any claims or amounts on the outstanding claim run issued by [the IF]"; and (4) "requires negotiation, payment and obtaining of releases within an unrealistically short time." (NRL's Objection at 2).

On the first two points raised by NRL, the IF "agrees and will amend the (Proposed) Orderly Plan of Liquidation accordingly." (IF's Response to NRL at 2). As discussed above, the IF proposes that paragraph 3 in the proposed liquidation plan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                Date:  May 1, 2019
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

be stricken and replaced with newly drafted language provided in the Response to
NRL.  (*Id.* at 2–3).

On the third point, the IF notes, and the Court agrees, that the proposed
liquidation plan does not state that a sponsoring employer "cannot challenge the claim
and amounts set forth in the June 1, 2019 unpaid claims runs."  (*Id.* at 10).

On the fourth point, the has previously discussed the two-track process in
connection with Hard Rock's Objection.

***Third***, NRL objects to paragraph 5 of the proposed liquidation plan because it
"does not set forth the manner in which the [IF] will adjudicate claims of employers
and others."  (NRL's Objection at 2).  The Court disagrees because the IF has already
"communicated with the third-party administrators and has been informed that out-of-
network claims are being adjudicated pursuant to the Plan Documents, including
application of usual and customary charges."  (IF's Response to NRL at 10–11;
Declaration of Robert E. Moore, Jr. Dated April 15, 2019 ("Moore Decl.-NRL") ¶ 11
(Docket No. 61-1)).

Accordingly, NRL's Objection is **OVERRULED *in part***.

### 3.       Systems Paving's Objection

On April 11, 2019, Systems Paving, Inc. ("Systems Paving") filed an Objection
to the Liquidation Motion.  (Docket No. 59).  The IF replied to System Paving's
Objection on April 18, 2019.  (Docket No. 68).

Systems Paving raises seven objections to the proposed liquidation plan: (1) lack
of notice; (2) deprivation of due process of law; (3) unfairness of approval of actions
against non-responsive sponsoring employers; (4) timing of proposed payments; (5)
failure to consider copayments, deductibles, and coinsurance; (6) lack of jurisdiction
over Systems Paving; and (7) unfairness of a "blanket ruling" without individual
consideration.  (Systems' Paving Objection at 1–6).  Because the first, fourth, and fifth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)              Date:  May 1, 2019

Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

objections have already been discussed, *supra*, the Court addresses only the remaining objections.

As to due process, Systems Paving provides no elaboration and simply states that it "objects to the entirety of the [Liquidation] Motion and Order, and the relief/Court actions sought therein, as such deprives it of due process of law." (Systems Paving's Objection at 3).  The IF correctly notes that to the extent that due process "relates to Systems Paving having the opportunity to 'be heard'," it is being heard through its Objection.  (IF's Response to Systems Paving's Objection at 8).  In addition, the proposed liquidation plan does not deprive Systems Paving of any rights. At its core, all the proposed liquidation plan does it set forth a procedure by which each sponsoring employer would receive "its obligations relating to the unpaid provider invoices" from the IF, and the sponsoring employer "can choose to ignore all of it." (*Id.*).  But if a sponsoring employer does ignore it, then the IF "can consider whether to sue the Sponsoring Employer, at which time the rights of the [IF] and Sponsoring Employer would be determined."  (*Id.*).

As to the unfairness of approval of actions against non-responsive sponsoring employers, the proposed liquidation plan specifies only that if Systems Paving does not pay its obligations relating to the unpaid provider invoices and claims, then the IF "may pursue an ERISA enforcement action against [Systems Paving]."  (*Id.* at 4).  In other words, the Court is not ***approving*** actions by the IF against non-responsive sponsoring employers, but only acknowledging that the IF ***may*** consider such actions.

Moreover, to the extent Systems Paving has a "side deal between itself and Riverstone," that agreement does "not set forth the obligations of Systems Paving regarding the Systems Paving employee benefits plan over which the [IF] is in control."  (*Id.*).  Rather, the "operative document regarding the Systems Paving employee benefits plan is the Plan Document and the Summary Plan Description," which make clear that the Systems Paving employee benefit plan is self-funded and that "the costs and benefits owed are the responsibility of Systems Paving."  (*Id.* at 5). This objection is therefore overruled for the same reasons the Court overruled the Hard Rock objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

_____

As to lack of jurisdiction, Systems Paving is not a party to this action, and the Court has jurisdiction over the Riverstone MEWA and Participating Plans to approve or reject the proposed liquidation plan.

As to the unfairness of a "blanket ruling," the IF is requesting an approval of a proposed plan of liquidation and "does not in any fashion require a ruling by the Court on issues such as whether the individual Sponsoring Employer is responsible for paying the amount of the employer obligation in relation to the unpaid provider invoices/claims." (*Id.* at 9).  The IF further notes that a sponsoring employer, after receiving the amount of unpaid claims, can choose to maintain its position that it owes nothing.  (*Id.*).  This position has been taken by a number of objectors.

Accordingly, Systems Paving's Objection is **OVERRULED *in part***.

### 4.    CEMCO's Objection

On April 15, 2019, California Expanded Metal Products Co. ("CEMCO") filed an Objection to the Liquidation Motion.  (Docket No. 63).  The IF replied to CEMCO's Objection on April 18, 2019.  (Docket No. 75).

Through its Objection, CEMCO objects to (1) the IF's "failure to provide adequate notice"; (2) paragraph 3 of the proposed liquidation plan because it does not account for employee responsibility (*i.e.*, copayments, deductibles, and coinsurance), provide sufficient time for sponsoring employers to negotiate and pay claims, requires releases from medical providers upon payment of claims, and does not set forth a process for a sponsoring employer to dispute the June 1, 2019, unpaid provider invoice/claims run; and (3) paragraph 5 because it does not identify the criteria on which funds will be allocated to claimants and contains no process for appealing the IF's claims allocations.  (CEMCO's Objection at 2).

The majority of these objections have already been addressed and, as the IF correctly notes, some are made "on grounds identical to objections raised by [NRL]." (IF's Response to CEMCO's Objection at 4).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 19-778-MWF (MAAx)**               **Date:  May 1, 2019**
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

The Court specifically addresses CEMCO's objection that the proposed liquidation plan does not identify the criteria on which funds will be allocated to claimants.  The IF points out that the Court "has already established the priority of claims to be addressed in the distribution of Plan assets – first, administrative fees and expenses; and second, the payment of legitimate claims to the greatest extent possible." (*Id.* at 6 (citing Consent Judgment (Docket No. 41)).  The IF then notes, and the Court agrees, that it "has always considered this to mean payment of administrative fees and expenses first, payment of unpaid medical-related claims second, and payment of non-medical claims third."  (*Id.*).  The IF also states that, if instructed by the Court, it can also "expand upon this issue in the treatment of the [Proof of Claim] process in paragraph 5 of the [proposed liquidation plan]."  (*Id.*).

While the IF's response to CEMCO's objection articulating the IF's understanding, the proposed change to paragraph 5 seems unnecessary.  The Court, out of an abundance of caution, will instruct the IF to provide greater clarity in the proposed liquidation plan.

Accordingly, CEMCO's Objection is **OVERRULED *in part***.

## 5.    FPI's Objection

On April 19, 2019, FPI Management, Inc. ("FPI") filed an Objection to the Liquidation Motion.  (Docket No. 72).  The IF replied to FPI's Objection on April 24, 2019.  (Docket No. 81).

Through its Objection, FPI objects to (1) the IF's failure to provide adequate notice; (2) the failure to precisely define "claims"; (3) the release/accord and satisfaction requirement and timing by which a sponsoring employer must obtain one; (4) the time periods as "unrealistic"; and (5) the lack of "accounting and credit to employers" for claims already paid.  (FPI's Objection at 1–12).  Because some of the objections have already been addressed, the Court will address only the second and fourth objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 19-778-MWF (MAAx)**                  **Date:  May 1, 2019**
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.
_____

As to the IF's failure to precisely define a "claim" for purposes of the proposed liquidation plan, FPI notes that the term is "overly broad" and the claims for which employers are responsible appear to include "greater financial liability than what employers would be responsible for under the terms of their respective plans, including portions of claims that employees are themselves responsible for paying under the plans (e.g., co-payments, deductibles, and co-insurance)."  (FPI's Objection at 4).  The Court disagrees.  As pointed out by the IF, a "claim" means the "unpaid provider invoices for dates of service through the time for which the Sponsoring Employer had paid premium equivalent/contribution to the Riverstone MEWA."  (IF's Response to FPI's Objection at 3).

The IF also contends that it is willing to amend the proposed liquidation plan for clarity.  (*Id.*).  As with CEMCO's objection that the proposed liquidation plan does not identify the criteria on which funds will be allocated to claimants, the Court will instruct the IF to provide greater clarity in the proposed liquidation plan.

As to the lack of "accounting and credit to employers" for claims already paid, FPI contends that sponsoring employers "should be credited with the claims for care that they already funded under their plans before the [IF] presents them with their claim run."  (FPI's Objection at 9).  FPI also contends that "the monies that employers paid to Riverstone to fund their plans can be traced back to employers, and they should get credit for the monies that they paid," or at least the employers "should get proportional credit for the assets in the plans that the [IF] is administering."  (*Id.*).

The IF offers two reasons why such a "credit" would not be possible, both of which the Court finds persuasive:

***First***, it is unclear how a credit to a sponsoring employer would be calculated or administered, especially in light of the fact that funds were commingled.  The IF notes that "unscrambling the commingled MEWA egg is not an easy process," requiring answers to at least the following question: what happens if some sponsoring employers have experienced paid claims in excess of their payments to the Riverstone MEWA?  Should "debits," as oppose to a credit, occur for those employers?  And if so, how will

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)              Date:  May 1, 2019
Title:      R. Alexander Acosta v. Riverstone Capital LLC, et al.

"debits" be administered or collected?  What happens if a sponsoring employer ceased sponsoring the Riverstone MEWA several years ago or is no longer in business?  Should it be debited?  Should a credit be conditioned upon the IF's successful collection of the outstanding debits?  (*See* IF's Response to FPI's Objection at 6–7).

*Second*, even if these issues can be resolved, FPI is essentially proposing that the funds held by the IF should be used now to pay claims that are the sponsoring employers' responsibility, rather than pay other creditors or administrative fees and costs.  (*Id.* at 7).  But this proposal would likely expose participating employees to balance billing and collection actions from medical providers.  Most strikingly, "there are simply not sufficient funds in the Riverstone MEWA Liquidation Estate to pay FPI (or other Sponsoring Employers) *up front* as to the amounts alleged to have been overfunded."  (*Id.* (emphasis added)).

Accordingly, FPI's Objection is **OVERRULED** *in part*.

## 6.    Burke Williams Day Spa's Objection

On April 23, 2019, Burke Williams Day Spa filed an Objection to the Liquidation Motion.  (Docket No. 77).  The IF replied to Burke Williams Day Spa's Objection on April 26, 2019.  (Docket No. 87).

Burke Williams Day Spa is raising the same seven objections that were raised in Systems Paving's Objection.  For the same reasons already discussed, the Court finds them unpersuasive.

Accordingly, Burke Williams Day Spa's Objection is **OVERRULED** *in part*.

## 7.    The City of Modesto's Objection

At the hearing, the City of Modesto appeared and noted that it did not file written objections because they were adequately covered by the other objectors.  The City of Modesto stated that it also has stop loss coverage and reaffirmed many of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-778-MWF (MAAx)                    Date:  May 1, 2019
Title:       R. Alexander Acosta v. Riverstone Capital LLC, et al.

objections previously discussed.  And for the reasons already stated, the IF will address the two-track process in the revised proposed liquidation plan.

### E.       All Writs Act Protection

The IF also requests an Order "staying, enjoining and/or prohibiting any effort by a person or entity to claim against the assets of the Plans, outside of the procedures set forth in the Proposed Liquidation Plan, is needed in aid of effecting" efficient liquidation.  (Liquidation Mot. at 12).  The IF explains that if "claimants do not follow [the] liquidation plan, but rather choose to make claims in other forums as against the assets of the Plans, then the orderly, centralized and equitable treatment of claims made against the assets of the Plans will be frustrated."  (*Id.* at 11–12).  The Court agrees.

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.

As the Court previously indicated in approving the Consent Judgment, the All Writs Act provides the Court with authority to issue an Order that extends to non-parties and such authority is inherent in ERISA actions.  *See, e.g.*, *United States v. New York Telephone Company*, 434 U.S. 159, 174 (1977) (concluding that "[t]he power conferred by the [All *Writs*] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice"); *Cutler v. 65 Sec. Plan*, 831 F. Supp. 1008, 1014 (E.D.N.Y. 1993) (recognizing "the court's power to stay all actions against the Fund" under the All Writs Act and analyzing "what procedure the court could adopt to assist the parties in achieving a quick and fair settlement of the case with the lowest possible transaction costs").

As indicated above, in reviewing and approving the revised proposed liquidation plan, the Court also intends to exercise its authority under the All Writs Act to enjoin providers who will receive notice and then fail to submit claims in a timely manner.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 19-778-MWF (MAAx)**                    **Date:  May 1, 2019**
Title:        R. Alexander Acosta v. Riverstone Capital LLC, et al.

Accordingly, the ruling on the Liquidation Motion is **DEFERRED**.

**IV.** **CONCLUSION**

For the reasons discussed above, the Default Motion is **GRANTED** and the ruling on the Liquidation Motion is **DEFERRED**.

On or before **May 6, 2019**, the IF is **ORDERED** to file a revised proposed liquidation plan consistent with the issues discussed above and raised at the hearing, including amendments to paragraphs 3 and 5, greater clarity on the definition of a "claim", revision to the Court's role in final determination of disputed claims, and new timelines for the two-track process for employers with and without stop loss coverage.

IT IS SO ORDERED.